UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BERNICE DAVIS, )
)
    Plaintiff, )
)
v. ) Civil Case No. 18-204 (RJL)
)
ANDREW SAUL, )
Commissioner of Social Security, )
)
    Defendant. )

## MEMORANDUM OPINION

June 30th, 2020 [Dkt. ##9, 10]

Plaintiff Bernice Davis ("plaintiff") brings this action against defendant Andrew Saul, the Commissioner of Social Security ("defendant" or "Commissioner"). Plaintiff seeks reversal under 42 U.S.C. § 405(g) of the Commissioner's final decision denying plaintiff's application for Supplemental Security Income benefits on the ground that the decision was not based on substantial evidence. Before the Court is plaintiff's Motion for Judgment of Reversal [Dkt. #9] and defendant's Motion for Judgment of Affirmance [Dkt. #10]. For the following reasons, the Court DENIES plaintiff's motion and GRANTS defendant's motion.

## BACKGROUND

On June 26, 2013, plaintiff filed an application for Supplemental Security Income benefits, alleging that she had been disabled and unable to work since 1996 due to depression, a mood disorder, and post-traumatic stress disorder. Administrative Record

("A.R.") at 10, 68, 165–71 [Dkt. #8]. When she filed her application, Bernice Davis was a 44-year-old woman living in Washington, D.C. A.R. at 19. She had dropped out of school in the ninth grade but obtained her high school diploma in 2006. A.R. at 40, 257. She does not have any college education or additional training. A.R. at 185, 257. She worked in housekeeping in 1985, see A.R. at 257, as a babysitter from 2006 to 2007, see A.R. at 40, 185, and again in housekeeping in 2014, see A.R. at 40, 238. Otherwise, she has been unemployed. A.R. at 41. She has a history of alcohol and drug dependence as well as depression and post-traumatic stress disorder. A.R. at 258–59, 285. As of the time of her application, she consumed a substantial number of beers each day, see A.R. at 50, 259, but no longer used illicit drugs, see A.R. at 57–58. She is prescribed various psychiatric medications but has not been compliant in regularly taking them. See A.R. at 50, 71, 214, 244.

On March 19, 2014, the Social Security Administration denied her disability claim, A.R. at 89–91, and on May 1, 2014, it denied her request for reconsideration, A.R. at 94–95, 97–99. Plaintiff then requested a hearing, A.R. at 100–01, which was held before an Administrative Law Judge ("ALJ") on November 30, 2016, A.R. at 34–67, 137. On February 24, 2017, the ALJ denied plaintiff's claim on the basis that, despite severe impairments including a right ankle fracture, obesity, substance dependence, depression, and post-traumatic stress disorder, plaintiff possessed the residual functional capacity to perform medium-level work with some limitations. A.R. at 12–19. He determined that plaintiff could perform jobs that existed in significant numbers in the national economy, such as a packer, grader/sorter, or table worker. A.R. at 20. On November 17, 2017, the

2

Appeals Council denied plaintiff's Request for Review, affirming the ALJ's decision and making the Commissioner's decision final for purposes of judicial review. A.R. at 1–5.

On January 26, 2018, plaintiff filed this action seeking reversal of the Commissioner's final decision.

## STANDARD OF REVIEW

The District Court must affirm an ALJ's decision that is supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard demands "more than a 'scintilla,' but less than a preponderance of the evidence." *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir. 2009) (quoting *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 461 (D.C. Cir. 2004)). This Court must engage in "careful scrutiny of the entire record." *Brown*, 794 F.2d at 705. However, the Court must not substitute its own judgment for that of the Commissioner. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).

When evaluating a claim of disability, the ALJ conducts a five-step inquiry to determine if the claimant suffers from a "disability." The burden of proof is on the claimant to satisfy the first four steps. *Stankiewicz v. Sullivan*, 901 F.2d 131, 133 (D.C. Cir. 1990). At step one, the claimant must show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the claimant is not gainfully employed, at step two, the claimant must show she has a "severe impairment"

that "significantly limits [her] . . . ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the ALJ determines the claimant has a severe impairment, at step three, the ALJ must determine whether the claimant's impairment "meets or equals" an impairment listed in the regulations. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant "is deemed disabled and the inquiry is at an end." *Butler*, 353 F.3d at 997; 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the Commissioner must assess the claimant's "residual functional capacity," 20 C.F.R. §§ 404.1520(e), 416.920(e) — *i.e.*, the most work the claimant can still perform despite her limitations, *id.* § 404.1545(a). At step four, the claimant must demonstrate that she is incapable of performing her prior work based on her residual functional capacity. *Id.* §§ 404.1520(f), 416.920(f).

If the claimant makes each of these four necessary showings, the burden shifts to the Commissioner for the fifth step: to show that the claimant can do "other work," considering her age, education, past work experience, and residual functional capacity. *Id.* §§ 404.1520(f)–(g), 416.920(f)–(g). If the claimant is not able to do other work, she is considered disabled and is entitled to benefits.

Here, the ALJ concluded that plaintiff was not engaged in substantial gainful activity and had severe impairments, satisfying steps one and two. A.R. at 12. At step three, the ALJ concluded that plaintiff did not have any impairment that met or equaled an impairment listed in Appendix 1, A.R. at 12–14, and thus assessed her residual functional capacity. At step four, the ALJ determined that plaintiff has the residual functional capacity to perform "medium work" as defined in 20 C.F.R. § 416.967(c), except that she could "stand or walk for 4 hours per day," "occasionally operate controls with the right

foot," "frequently climb ramps, stairs, ladders, ropes, and scaffolds," "frequently balance, stoop, kneel, crouch, and crawl," and "must avoid concentrated exposure to cold, wetness, excessive vibration, hazardous machinery, and unprotected heights." A.R. at 14. He concluded she could perform "simple, routine, and repetitive tasks in a low stress environment with no strict production quotas and occasionally interact with the public, coworkers, and supervisors." A.R. at 14. The ALJ then determined that plaintiff is "unable to perform any past relevant work." A.R. at 19. At step five, the ALJ concluded that, considering her age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that [she] can perform." A.R. at 19–20.

## ANALYSIS

Plaintiff contends the ALJ's residual functional capacity assessment was not supported by substantial evidence for four discrete reasons. First, plaintiff contends that in assessing her residual functional capacity, the ALJ failed to "set forth a narrative discussion" articulating "how the evidence supported each conclusion." Mot. for J. of Reversal at 5–6 [Dkt. #9]. For example, according to plaintiff, the ALJ failed to explain the basis for his findings that plaintiff could "frequently climb ramps, stairs, ladders, ropes, and scaffolds" and "perform simple, routine and repetitive tasks in a low stress work environment with no strict production quotas." *Id.* at 6. The ALJ must "build an 'accurate and logical bridge from the evidence to [his] conclusion' so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful

judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (alteration in original) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Upon review of the ALJ's analysis, I find the ALJ built a sufficiently "accurate and logical bridge" for this Court to review his ultimate determination. The ALJ's residual functional capacity assessment discussed the various function reports, hearing testimony, medical opinions, and state agency assessments in the record, assessed their consistency with the objective medical evidence, and reasonably concluded that plaintiff could perform simple, routine, and repetitive tasks in a low-stress environment. A.R. at 14–19. For example, the ALJ's analysis of plaintiff's physical capabilities considered her history of ankle surgery, A.R. at 316, 374, a medical opinion that her gait was normal, A.R. at 374, 377, and her ability to perform daily tasks like grocery shopping and laundry without assistance, A.R. at 194, 261. *See* A.R. at 15–19. Likewise, the ALJ's conclusion that she should only "occasionally interact with the public, coworkers, and supervisors," A.R. at 14, took into account plaintiff's testimony and her brother's functional report, which described plaintiff's difficulty interacting with others, on the one hand, and her ability to leave the house, shop for groceries, and navigate public transportation, on the other hand, *see* A.R. at 14–15. Plaintiff fails to show what more connection to the evidence was needed. The ALJ's discussion sufficiently fulfilled his obligation to complete a function-by-function analysis that allows this Court to conduct a meaningful review. *See Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017). The ALJ's conclusions were therefore based on substantial evidence in the record.

Second, plaintiff contends the ALJ's assessment that plaintiff "can stand or walk for 4 hours per day," A.R. at 14, contradicts his determination that plaintiff was capable of "frequently" climbing, balancing, stooping, and crouching, A.R. at 14, tasks that require being on one's feet. Mot. for J. of Reversal at 7. The Commissioner responds that the term "frequently" contemplates performing tasks for one- to two-thirds of the workday, which squarely encompasses up to 4 hours on one's feet. Mot. for J. of Affirmance at 13 [Dkt. #10] (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)). Like the Commissioner, I fail to see any inconsistency in the ALJ's assessment. The ALJ performed a detailed analysis of plaintiff's ankle fracture history and obesity, her physically active daily habits such as grocery shopping and doing laundry, and her other physical characteristics. *See* A.R. at 19. The ALJ reasonably concluded that plaintiff could stand or walk for up to 4 hours per day. Moreover, this level of activity is required by only some of the jobs the ALJ found available to plaintiff in the national economy. *See* A.R. at 19–20. As such, I am convinced that the ALJ's assessment of plaintiff's capacity to perform certain tasks on her feet was supported by substantial evidence.

Third, plaintiff contends the ALJ's assessment failed to account for physicians' evaluations that she "might miss 1-2 days/month due to depressive symptoms." Mot. for J. of Reversal at 8 (citing A.R. at 75). As the Commissioner notes, however, the ALJ explicitly considered the state agency's opinion, A.R. at 18–19, but determined that the record holistically showed a "greater ability to maintain a regular work schedule," A.R. at 19. This record included an opinion from consultative examiner Dr. White, who concluded that plaintiff could maintain a regular schedule without any problems, A.R. at 261. The

ALJ "acknowledged all of the medical opinions in the record, explained why he viewed certain evidence as more credible than other evidence, and adequately explained" why he rejected one physician's assessment. *Hartline v. Astrue*, 605 F. Supp. 2d 194, 209 (D.D.C. 2009). The ALJ's assessment of plaintiff's potential need to miss 1-2 days/month of work was therefore supported by substantial evidence.

Fourth, plaintiff contends the ALJ ignored limitations in plaintiff's ability to concentrate or persist. Mot. for J. of Reversal at 8–9. However, the Commissioner points out that the ALJ's limitation of plaintiff to simple, routine, repetitive tasks in a low-stress environment was in direct response to plaintiff's potential issues with concentrating and persisting. A.R. at 14, 18. The ALJ need not have gone further, as he also assigned considerable weight to Dr. White's opinion that plaintiff would "have no difficulty following simple or complex directions," "maintain[ing] a regular [work] schedule," and "learn[ing] new tasks." A.R. at 18; *see* A.R. at 261. Plaintiff herself testified at the hearing that while her mind races and she is often worried and unhappy, she does not have issues focusing or concentrating. A.R. at 61–62.

Plaintiff's final objection is that the ALJ failed to properly assess plaintiff's credibility before disregarding her subjective complaints of pain. Mot. for J. of Reversal at 9–10. To the contrary, the ALJ explained that he did not credit plaintiff's claims regarding the intensity of her ankle pain and her depression in part because plaintiff did not continue with mental health services, did not consistently take psychiatric medications, and did not follow up with physical therapy after her ankle surgery. A.R. at 17–18. The ALJ also weighed plaintiff's "demonstrated independence at home and in the community"

8

against her claimed disability. A.R. at 18. He further considered the opinions of two doctors and two licensed social workers, all of whom assessed plaintiff to have moderate mental functioning abilities. A.R. at 18. Reviewing this evidence, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence." A.R. at 16. Such a determination is not for this Court to disturb! "The credibility determination is solely within the realm of the ALJ" and is only to be disrupted when "an ALJ fails to articulate a rational explanation for his or her finding." *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012). The ALJ reasonably explained his findings, which this Court must now affirm.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Judgment of Reversal [Dkt. #9] is DENIED, and defendant's Motion for Judgment of Affirmance [Dkt. #10] is GRANTED. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge